Claudine Osgood
5771 Mission Center Road #104
San Diego, CA 92108
626-641-5656

Anton Ewing
3077 B Clairemont Drive #372
San Diego, CA 92117
619-719-9640

Plaintiffs In Pro Per

# FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CLAUDINE OSGOOD, an individual<br><br>ANTON EWING, an individual<br><br>        Plaintiff,<br><br>        vs.<br><br>Main Streat Marketing, LLC, a Utah limited liability company;<br>Jerrod Robker, an individual aka Jerrod McAllister;<br>DOES 1-100;<br>ABC CORPORATIONS 1-100;<br>XYZ, LLC's 1-100.<br><br>        Defendants | Civil Case No. 16CV2415 GPC BGS<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S INVASION OF PRIVACY ACT;**<br>**CAL. PENAL CODE SECTION 630, *ET SEQ.;***<br>**18 U.S.C. §1964(c) RICO;**<br>**47 USC § 227 TCPA**<br><br><br>DEMAND FOR JURY TRIAL |

1.     Plaintiff Claudine Osgood ("Osgood") and Plaintiff Anton Ewing

("Ewing"), on behalf of themselves individually (in propria persona), allege

against each and every defendant both collectively and separately, as follows

against defendants JERROD ROBKER, an individual who is otherwise known as

Jerrod McAllister (herein "Robker"), MAIN STREAT MARKETING, LLC, a

Utah limited liability company (herein "Main Streat"), DOES 1-100, ABC

CORPORATIONS 1-100, and XYZ, LLC's 1-100 (Collectively "Defendants").

2.     Defendant Jerrod McAllister sent several false and fraudulent emails to

Plaintiff Ewing that stated, in part, the following:

> "I'm not afraid to go to court with you. My attorneys will chew you up and
> shit you out like the piece of shit you are..."

> "you deserve to be beaten"
> " Fuck yourself "

> "You're seriously pathetic"
> "Goodbye, loser."

> "you're a tool and an ambulance chaser"

> "dickheads like you…"

3.     On September 20, 2016, Defendant's attorney, Yosef Mahmood called

Plaintiff Ewing and threatened Ewing with sanctions and attorney fees under CCP

§128.7 because Mahmood stated that a cellular phone is a radio and thus not

protected from illegal recording under California's Penal Code.

4.     Upon information and belief, Jerrod Robker is Jerrod McAllister and Jerrod

McAllister is Jerrod Robker.  Wherever the name Robker is contained in this

Complaint, it hereby means and is intended to mean McAllister also.  Wherever the

word "Defendants" is used herein it means Jerrod Robker, Jerrod McAllister and Main Street Marketing, LLC, a Utah limited liability company.

5.    Plaintiffs have never had any prior business relationship with any of the Defendants.  Plaintiff Osgood's cellular telephone number 626-641-5656 is a private personal cellular telephone number.  Plaintiff Ewing's cellular telephone number 619-719-9640 is a private cellular telephone number.  Defendants used an automatic telephone dialing system ("ATDS") as defined by Title 47 and the Federal Communications Commission to robo-dial (or automatically dial) with a prerecorded message to call and record Plaintiffs' cell phone, for telemarketing purposes.  Each Plaintiff's cell phone number is registered on the National Do Not Call Registry ("DNC").

6.    This Complaint is written by unrepresented pro se plaintiffs who are not members of the bar and is to be given wide latitude as such. *Hebbe v. Pliler*,  611 F.3d 1202 (2010)  "Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)  The *Estelle* case has been upheld 8680 times and never overruled or questioned. *Estelle* has also been cited over 34,000 times.

7.    In *Clark v. Bibb County Board of Education*, 174 F.Supp.2d 1369 (M.D.Ga. 2001), the court succinctly stated:  because plaintiff is representing himself in this

case, the Court must observe that pro se litigants are entitled to wide latitude when construing their pleadings and papers. See *SEC v. Elliott*, 953 F.2d 1560, 1582 (11th Cir.1992). One court has articulated the underlying policy rationale for this rule as follows: "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). See also, *Middleton v. City of Lakeland*, 830 F.Supp. 1449, 1451 (M.D.Fla. 1993) ("The Court must read Plaintiffs *pro se* allegations liberally, holding them to a less stringent standard than those drafted by an attorney.") See *In re O'Malley*, 252 B.R. 451, 456-457 (N.D. Ill. 1999) (though a judge is not to become an advocate for *a pro se* litigant, the court does have a duty to "take appropriate measures that will permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds.") (internal citations omitted); *In re Barrows*, 171 B.R. 455, 459 (D. N.H. 1994) (*pro se* parties' pleading is entitled to a more lenient construction than might otherwise be required in litigation in which both parties are represented by counsel)

8.      The U.S. Supreme Court has made clear that a *pro se* complaint is held to "less stringent standards than those pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Brown v. Califano,* 75 F.R.D. 499

(D.D.C. 1977).  The equitable reasons for affording *pro se* plaintiffs wide latitude in constructing their pleadings are simple and obvious.

9.      As one judge has explained, *pro se* litigants often "are ignorant of the niceties of state and federal practice, and lack the contacts with the legal profession that the more well-to-do and assured of our society rely on to prevent having claims barred by statute of limitations." *Stewart v. United States Postal Service,* 649 F. Supp. 1531, 1535 (S.D.N.Y. 1986) (quoting *Singleton v. City of New York,* 632 F.2d 185, 196 (2d Cir. 1980)

## JURISDICTION TO HEAR THIS COMPLAINT IN STATE COURT

10.      Plaintiff Claudine Osgood (herein "OSGOOD") and Plaintiff Anton Ewing (herein "EWING") each bring this action for multiple violations of California's Privacy Act and California Penal §630, et seq. by Defendants, and each of them, as hereinafter described.  The causes of action are, in large part, state law violations regarding illegal recording, unfair business practices, fraud, trespass to chattels, and spoofing.  The causes of action are listed in accordance with California Rule of Court 2.112.

11.      Defendants failed to remove this action within 30 days from August 22, 2016 which was the day that all Defendants received the Summons and Complaint from a registered process served through formal service which was effectuated pursuant to CCP §415.40.  Additionally, Defendant McAllister was emailed a true and accurate copy of the Summons and Complaint on August 16, 2016.

### Standard Applicable to a Preliminary Injunction

12.   To demonstrate her entitlement to a preliminary injunction, Plaintiff Osgood

must show (a) that she will suffer irreparable harm and (b) either (i) a likelihood of

success on the merits or (ii) sufficiently serious questions going to the merits to

make them a fair ground for litigation and a balance of hardships tipping decidedly

in Plaintiffs' favor.

13.   This Court has personal and subject matter jurisdiction and venue over state

law claims and may hear pendant federal law violations.  Any claim or averment

by defense counsel that TCPA and/or RICO claims cannot be heard in state court

would be frivolous and subject counsel to sanctions by the Court.

14.   The Court is requested to enter an order for preliminary injunction to

prohibit Defendants from calling or spamming Plaintiffs and to prohibit

Defendants from selling their personal confidential information to third parties.

### FICTITIOUS DEFENDANTS

15.   Does 1-100, ABC Corporations 1-100 and XYZ, LLC's 1-100, are each sued

fictitiously because their true names are currently unknown but leave to amend is

hereby reserved and amendment will be made to properly name said defendants as

soon as discovery allows therefor.   All fictitiously named defendants are accused

of and responsible for each and every violation and causes of action described

herein.   Just because the Complaint does not repeat the words "fictitious

defendant" over and over again does not in any way remove them from liability or responsibility.

## GENERAL ALLEGATIONS & CORPORATE BACKGROUND

16.     Plaintiff Claudine Osgood is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California.   Plaintiff Anton Ewing is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California

17.     Defendant ROBKER (or McAllister) was doing business in California in May, June, July and August of 2016.  ROBKER and Main Street Marketing, LLC, purposefully directed their activities into California and have knowingly and intentionally availed themselves of the benefits and protections of California law.

18.     Main Street Marketing, LLC is not licensed, in any manner whatsoever, to sell loans in California.  Main Street Marketing, LLC fraudulently stated on each telemarketing call that it was "certified" and "licensed" by Google.   In at least one of the illegal calls made by Defendants to Plaintiff Ewing, the call was received by Ewing prior to 8:00 AM Pacific time (California time).  It is illegal to make telemarketing calls prior to 8:00 AM in the time zone in which the phone is located.

19.     On Defendant's web page at http://mainstreatmarketing.com/ it claims that it has three offices in "southern California" when in fact it does not have even one

office and Main Streat Marketing, LLC is not even registered to do business in

California with the Secretary of State.  According the certified filings with the

Utah Secretary of State, Main Streat Marketing, LLC claims that is provide legal

services and practices law as "NAICS Title: 5411-Legal Services".  See

https://secure.utah.gov/bes/details.html?entity=9587705-0160

20.    Main Streat Marketing, LLC is a defunct and suspended entity that is not in

good standing with the Secretary of State and thus is constitutes a criminal act

under California's Revenue and Taxation Code for an attorney to represent said

LLC in a court of law.  See R&T §19719.

21.    This action arises out of Defendants' violations of California's Invasion of

Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), which prohibits the recording

of confidential communications without the consent of all parties to the

conversation as well as violations of Racketeering Influence and Corrupt

Organizations Act, 18 U.S.C. §1964 and the Telephone Consumer Protection Act,

47 U.S.C. §227.  Additionally, as a pendant claim, Defendants have violated

California Public Utility Code section 2873 and 47 USC §227(b)(a)(A) by using an

automatic telephone dialing system and automated answering device to call

Plaintiffs on their private cellphones.   Defendants have also violated 47 C.F.R,

§64.1200 and thus harmed Plaintiffs.

22.    Upon information and belief and pleading in the alternative, during the period relevant herein and continuing presently, Defendant ROBKER was and continues to be the alter ego of Defendant Main Streat Marketing, LLC.

23.    Upon information and belief, on August 11, 2016, Defendant ROBKER, or one of its employees, agents or contractors at its direction and control, called Plaintiff Osgood from 626-472-1821 on Plaintiff Osgood's personal cellular telephone at 626-641-5656 for which OSGOOD has expressly informed the public to not make solicitation calls and/or texts via national do-not-call list registration as well as other public warnings.

24.    Additionally, Osgood informed Defendant Robker that her phone was on the do not call registry and asked for a copy of the internal do not call policy; however, Main Streat Marketing, LLC continues to illegally call Osgood and Ewing over and over again to telemarket Main Streat Marketing, LLC's scam business program.

25.    Plaintiff's hereby allege that a personal cellular phone is not even required to be listed on the National Do Not Call list in order to receive protection from spam telemarketers.  Main Streat Marketing, LLC is not licensed to do business in California.  Main Street is currently violating California tax laws and is criminally evading California taxes.

26.     Each Defendant has also failed to register as a telemarketer with the California Attorney General pursuant to California Business & Professions Code §17511 et seq. and has also failed to pay the $50 application fee, to file the Form A and to post the required $100,000 bond.  This failure to act is a criminal act under B&P 17511.9 to fail to registered as indicated above.

27.     During the period relevant herein, ROBKER and Main Streat Defendants, including Robker's agents, were a provider of information technology and centralized operational and back-end support services to the ROBKER, and all of its subsidiaries. As such, ROBKER, including Main Streat Marketing, LLC, provided the infrastructure for dialing and recording the call and/or text at issue in this litigation.  ROBKER used automated telephone dialing systems and recording devices at the direction of Main Streat Marketing, LLC, and its relevant subsidiaries.

28.     ROBKER also managed the call and/or text centers and telephony architecture and telephone recordings for the enterprise, and its subsidiaries, including Defendant ROBKER and Main Streat Marketing, LLC.  ROBKER continues to manage call and/or text centers and recordings on behalf of the racketeering enterprise business.  Defendant ROBKER is technologically sophisticated and Defendant ROBKER employs this high level of knowledge and know-how to run his criminal syndicate.

29.   In *Gomez vs. Campbell-Ewald Co*.,   768 F.3d 871; 2014 U.S. App. LEXIS 18019; 61 Comm. Reg. (P & F) 363, the 9th Circuit held that all the actors in the telemarketing chain are vicariously liable for the acts of eachother.  The 9th Circuit also expressly held that there is in fact standing under Article III to sue under the TCPA.  The US Supreme Court upheld this holding on January 20, 2016.  Each Defendant named herein, including the fictitiously named defendants, is vicariously liable for the acts of its agents and for eachother's acts.

30.   Moreover, ROBKER continues to monitor and record telephone calls to California residents, including each Plaintiff.

31.   During the relevant period herein, thousands of telephone calls with individuals in California were recorded by ROBKER's telephone systems at the direction of each of the other Defendants.

## JURISDICTION OVER ALL CLAIMS AND ALL PARTIES

32.   Jurisdiction is proper in the Superior Court because Plaintiffs are residents of San Diego, California.   The Superior Court of California has concurrent jurisdiction over all TCPA and RICO claims.

## VENUE

33.     Venue is proper in San Diego County because Plaintiffs reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in San Diego County.  Each of the Defendants has sufficient minimum contacts with San Diego County and the State of California, and otherwise purposely avail themselves of the markets in this state and San Diego County. Defendants knowingly and intentionally called area code 619 and 626 which they had reason to know are solely and strictly within California.

**PARTIES**

34.     Plaintiff CLAUDINE OSGOOD and ANTON EWING are residents of San Diego County, California whose confidential telephone communications were unlawfully recorded by ROBKER Defendants during the period relevant herein. Plaintiff OSGOOD had placed her telephone number for her cellular phone on the Do Not Call registry more than 31 days prior to the offending calls.

35.     In August, 2016, Plaintiff OSGOOD was knowingly and intentionally called multiple times by ROBKER Defendants, or its agents, based on a telephone list obtained by ROBKER.  An employee named Machayla made multiple calls to Plaintiff Osgood and he or she (Machayla) is an employee of Defendants.

36.     A Main Street Marketing, LLC employee by the name of Kim Swanson and Cory Williams called Plaintiff Ewing.   Plaintiff Ewing was called over and over

again by Defendants even after Ewing demanded that they stop calling. Main Streat Marketing, LLC ignored litigation threats (CCP §47b) and Plaintiff's demands to cease and desist.

37.    Devoy and Cory Williams confessed that Main Street Marketing, LLC uses and employs a third party company in India to originate its telemarketing calls. Main Streat Marketing, LLC employs a third party company in India in order to knowingly and intentional evade United States federal and California criminal laws that prohibit telemarketing (47 USC §501) and illegal recording (Penal Code §632).

38.    Main Streat Marketing, LLC and Robker are engaged in a conspiracy to violate federal and state criminal laws prohibiting unlawful telemarketing and unlawful recording, through the use of the wires of the United States. Cory Williams admitted that Main Street Marketing, LLC records calls and does not provide any advance warning thereof. Upon information and belief formed after reasonable and diligent research, Robker is a felon and convicted child molester according to public records.

**Defendants**

39.    Defendant JERROD ROBKER is located in Utah.

40.    Plaintiff is informed and believes, and therefore alleges, that Defendant ROBKER owned the call centers that were used to make the non-consensual recordings of confidential communications that are at the core of this matter.

41.    Plaintiff is informed and believes, and therefore alleges, ROBKER himself, also supervised and conducted the internal affairs and daily business operations of Defendant Main Street Marketing, LLC in such a way as to treat all of its subsidiaries, including ROBKER as their alter ego, by engaging in conduct, acts or omissions including controlling ROBKER to such a degree as to render Main Street a mere instrumentality of Defendant ROBKER.  This allegation is pleas in the alternative.

42.    Plaintiff is informed and believes, and therefore alleges, Defendant ROBKER, its agents and employees constitute a racketeering enterprise through Main Street Marketing, LLC.  Said enterprise used and employed the wires of the United State of America to engage in serious fraudulent and criminal activity by robo-dialing or ATDS calling to Plaintiff Osgood and Plaintiff Ewing's California cellular telephones.  These calls crossed state lines and thus constitute the predicate act of wire fraud in that Defendants, including Robker, and Main Street Marketing, LLC, used the telephone infrastructure of the United States to commit their interstate criminal activities that were continuous and ongoing for several years, including 2015 and 2016.  Defendant ROBKER is in the business of illegally

buying and selling lists of names of persons on the National Do Not Call list so that those persons get and receive calls from spammers and telemarketers. Defendant ROBKER knows that all of the calls made are recorded without permission or proper disclosure of the recording.

43.    Jerrod McAllister also uses a BBB F rated company called Local Verifications, LLC to engage in his illegal telemarketing and other racketeering activities.

44.    A simple Google search of Jerrod Robker on the Utah secretary of state shows that he is the agent for service of Main Streat Markting, LLC and he is from Cedar City according to the Secretary of State.  Further:

http://www.utahsright.com/chargesprofile.php?id=1072372

Jerrod Grant Robker
Date: 1998-02-20
Court: Cedar City District
Details:
```
Case:           981500143
Violation Code: 76-5-404.1
Violation:      SEXUAL ABUSE OF A CHILD
Judgement:      {Guilty Plea}
Plaintiff:      STATE OF UTAH
```
Plaintiff Attorney:
Other Charges:*
```
Case:    981500143
Date:    1998-02-20
Violation: LEWDNESS INVOLVING A CHILD
Case:    101500667
Date:    2010-11-01
Violation: ATTEMPTED ASSAULT BY PRISONER
Case:    101500667
```

Date:       2010-11-01
Violation: INTERFERENCE WITH ARRESTING OFFICER

45.     Plaintiff Osgood and Plaintiff Ewing are informed and believe, and therefore

allege, that defendant ROBKER's comprehensive right to control is sufficient to

meet the agency standard under California law.

46.     Plaintiff Osgood and Plaintiff Ewing are informed and believe, and therefore

allege, during the relevant period described herein, Defendants, and each of them,

each aided and abetted, encouraged and rendered substantial assistance to each

other in furthering the CIPA and RICO violations.  In addition to acting on their

own behalf individually, Defendants, and each of them, are and were acting as the

agent, alter ego, servant, employee, joint venturer, and representative of, and with

the knowledge, consent and permission of, and in concert with the other

defendants.  The actions of the defendants as described in this complaint all fall

within the course, scope, and authority of the agency, service, and employment

relationships that exist between the defendants, and as such, create joint ventures

between all of the defendants to the extent that binding legal relationships do not

already exist.

47.     The actions and representations of Defendants constitute a conspiracy on the

part of Defendants, including Robker and Main Street Marketing, LLC, for the

purpose of such actions and representations made to the Plaintiffs of this cause of

action.  ROBKER illegally and unlawfully engaged in the conduct of an enterprise

through a pattern of racketeering activity.  Said conduct occurred over an extended period of time so as to form a pattern as defined under Title 18.  The enterprise consisted of Defendants ROBKER, Main Street Marketing, LLC and each fictitiously named defendant.

48.     The enterprise was controlled, operated, directed and managed by Defendant Main Streat Marketing, LLC, Defendant Robker and other persons that are yet to be determined and remain unknown as of the time of filing this Complaint. Defendant Main Streat is engaging in organized crime with its co-conspirator Jerrod Robker.

49.     Wire Fraud under 18 USC §1343 is present in this case with these named defendants when Defendant ROBKER and Defendants Main Streat Marketing, LLC, having devised or intending to devise a scheme or artifice to defraud, that is, their criminal robo-dialing and illegal telemarketing (47 USC §501), or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.  In this case Defendant ROBKER called Plaintiffs personally and caused Plaintiffs to be texted and recorded in violation of California's criminal law.  Defendant ROBKER's call constituted a scheme and artifice to defraud

Plaintiffs and to obtain money and property from Plaintiffs. Defendant ROBKER attempted to get Plaintiffs to send him money. The calls were transmitted by means of wires in interstate commerce through the telephone and internet lines of the United States. Defendant ROBKER made telephone calls to Plaintiffs to engage in wire fraud and to commit the criminal acts expressly stated herein, including criminal acts of recording calls and criminal acts of ATDS robo dialing of cell phones owned by Plaintiffs. For purposes of the particularity requirement, Defendant ROBKER or his agent called on August 11, 2016 at 11:37 AM and multiple other times.

50.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for
> It's provisions limiting junk-fax transmissions. A less-litigated
> part of the Act curtails the use of automated dialers and
> prerecorded messages to cell phones, whose subscribers often
> Are billed by the minute as soon as the call is answered--and
> Routing a call to voicemail counts as answering the call. An
> Automated call to a landline phone can be an annoyance; an
> Automated call to a cell phone adds expense to annoyance.
> *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012).*

51.     Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the do-not-call-list requirements under 47 U.S.C. §227(c )(5). *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiffs may recover both $1500

statutory damages awards even if both violations occurred in the same telephone call.

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL TELEPHONIC COMMUNICATIONS WITH PLAINTIFFS

52.    In August, 2016, plaintiff OSGOOD was called multiple times by ROBKER and his co-Defendants.  ROBKER and his co-Defendants engaged Plaintiff OSGOOD in confidential telephone communications.  To the best of Plaintiff OSGOOD's recollection, she spoke to ROBKER Defendants' personnel several times, including employee Macheyla, in addition to being called by the ROBKER and/or ROBKER robotic Echo system.

53.    On any of the occasions when she spoke telephonically with ROBKER Defendants' personnel, Plaintiff OSGOOD  and Plaintiff Ewing were not advised at the outset of the calls that the calls might be recorded by ROBKER Defendants.  In light of the sensitive nature of the personal and confidential information being discussed during the telephone calls, Plaintiff OSGOOD and Plaintiff Ewing had an objectively reasonable expectation of privacy – in that they reasonably expected that the conversations were not being overheard, monitored and/or recorded.

54.    Defendant ROBKER refused to provide Plaintiffs with a written copy of its do not call policy and refused to take Plaintiff Ewing or Osgood's name and

number off the telemarketing list.  Robker used an ATDS telephone dialing system to automatically dial Plaintiff Ewing's and Plaintiff Osgood's phone number and sell business loans.  Robker has failed to train his personnel, agents and employees on the Telephone Sales Rule promulgated by the FTC.

## DEFENDANTS' IMPROPER AND ILLEGAL
## RECORDING POLICIES AND PRACTICES

55.    Defendants' policies and practices, during the period relevant herein and continuing to the present, were to record confidential telephonic communications with California individuals, without advising them at the outset of each telephone call that it is being recorded, in violation of California Penal Code §630, *et seq.*

56.    ROBKER and all other Defendants did not obtain consent to record any of the telephone conversations prior to the time they recorded the calls.  Main Streat Marketing, LLC has admitted that it records its telemarketing calls and that its third party agents from India and elsewhere record telemarketing calls without warnings.

57.    ROBKER designed and implemented an extensive call center system for the thousands of consumer transactions serviced by its various affiliates and subsidiaries.  During the times relevant to the CIPA claims made herein, the system included 3 domestic and international call centers from which customer calls are placed and received on behalf of ROBKER business units.

58.    ROBKER and Main Street Marketing, LLC operate, implement and manage the architecture and infrastructure necessary to meet the call recording strategies set by ROBKER and all Defendants.  At the direction of the relevant business unit subsidiary of ROBKER Racketeering infrastructure dialed telephone numbers to California individuals and recorded the telephone calls. The volume of calls and texts was extraordinary.  At each call center, defendant ROBKER, including Main Street Marketing, LLC, used databases and servers to store and retrieve the recordings.

59.    ROBKER and Main Street Marketing, LLC continue to maintain call centers and oversee recordings in connection with ROBKER's line of business.  Plaintiff Osgood and Plaintiff Ewing will seek, demand and argue for punitive damages at trial herein to send a message to Defendants and others similarly situated that violation of California's criminal and federal stalking, terrorism and harassment laws are not allowed.  Defendants also violated California Penal Code §653m by repeatedly and in a seriously annoying manner, calling each Plaintiff over and over again.  No permission or subsequent permission to call was ever given or granted in any manner whatsoever by either Plaintiff for Main Street Marketing, LLC or any other defendant or fictitious defendant to call either of Plaintiff's cell phones.

60.    The central automated telephone dialing system ("ATDS") was, and currently continues to be, used by Defendants to initiate up to two thousand calls a

day.  The ATDS is used by all the subsidiaries of ROBKER RACKETEERS.

Approximately 10% or 1,000 of these calls were made to California consumers.

Defendants' policy and practice was to set the ATDS to call the consumer's home,

business, and cellular telephones up to five times a day.  Depending on the

instructions given by each business unit, 15%-20% of all of the telephone calls (at

times up to 100% of the calls in certain businesses) were set to record by ROBKER

and recorded, using a centralized call recording hardware and software.  Recording

began when the customer was connected with a call center agent.

61.     Defendants together strategically managed the ATDS to maximize

resources, i.e., by employing a consistent process across the businesses for

determining how and when calls would be made through the ATDS and scoring or

rating the calls for advance treatment through the ATDS.

62.     ROBKER's businesses directly loaded customer information onto

ROBKER's "mainframe" or "back-end" computer system, which includes the

ATDS.  During the day, accounts would be loaded into dialer tables, and the tables

would then be run through the dialer.  Once the ATDS would initiate the call, and a

customer would answer, ROBKER's "automated call distributor" would then route

the call to an available agent. Defendants called Plaintiff OSGOOD at 626-641-

5656, her personal cellular telephone.  Plaintiff OSGOOD was physically present

in California during each and every illegally recorded telephone conversation

alleged herein.  At the same time the call was routed, the agent received the customer's information on a computer screen.  If a recording of the telephone communications was going to be made by the recording system, the recording would begin when the Defendants' agent picked up the call.  The agents do not have the ability to stop or start call recording.  The agents do not know which calls are being recorded and have admitted that all calls are recorded.  An employee of ROBKER stated that all calls are recorded and there is no warning or disclosure of such recording to the consumer during the entire call.

63.     With respect to whether the telephone agents themselves provide the call recipients with a verbal advisement that the call may be recorded, Defendants admit to a policy whereby the agents ***do not provide any advisement*** to customers that the calls are being recorded.

64.     For calls related to ROBKER'S business, Defendants are required, pursuant to California Penal Code §630 et seq., to give a verbal advisory that the call is being recorded before speaking to a customer.  Defendants have previously admitted that based on an evaluation of a sample set of recordings, a verbal advisory was not given.

65.     CIPA prohibits the recording of communications without first obtaining the consent of all parties to the conversation. Cal. Penal Code §632. PC Section 632.7 does not require that a communication be confidential in order to be provided

protection from interception or recording. The call and/or text of the section notably contains no reference to "confidential communications;" moreover, more than just confidential communications are protected. ALL communications that are recorded without the consent of both parties to the communication are protected.

66.     The right protected by Section 632 is not against the betrayal of a party's confidence by the other party. Rather, Section 632 protects against simultaneous dissemination to an unannounced second auditor without the party's consent.  Any communication, regardless of the intimacy of the facts discussed, that is recorded devoid of notice of recordation, is a violation of California law.

67.     Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal. Pen. Code §632(c).  In other words, a communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard."

68.     In light of the sensitive nature of the personal financial and related information being discussed in the calls with Defendants, Plaintiffs had an objectively reasonable expectation of privacy – in that OSGOOD and Ewing reasonably expected that the conversations were not being overheard, monitored and/or recorded.

69.     The absence of any such advisement would lead a California consumer to reasonably anticipate that his/her telephone call was not being recorded.

70.     In violation of the CIPA, Defendants recorded Plaintiffs' telephone calls without OSGOOD or Ewing's express consent.  The exhibits attached to this complaint show in detail the exact numbers that Defendants used to call Plaintiffs.

71.     Defendants have engaged in a pattern and practice of recording a substantial percentage of the telephonic communications with individuals located in California.

72.     Defendants intentionally, and without the consent of all parties, by means of an electronic recording device, recorded confidential telephonic communications with Plaintiff OSGOOD and Plaintiff Ewing.

73.     The complaint here is timely filed.  The applicable statute of limitations for violations of the CIPA is one year (Cal. Civ. Proc. Code §340(a)).

74.     This Complaint is thus timely filed and Defendants have been on timely notice.  Plaintiffs have tried diligently to resolve this matter before filing.

## CAUSES OF ACTION

### First Cause of Action

### I.

### (For Statutory Damages and Injunctive Relief for Violations of Cal. Penal Code Sections 632 and 637.2(a)-(b))

**(as to Defendant McAllister, Defendant Main Streat Marketing, LLC and**

**all fictitiously named defendants)**

75.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

76.   At all times relevant herein, Defendants, including Robker and Main Streat Marketing, LLC routinely communicated by telephone with Plaintiffs in connection with attempts to sell products of Defendants.

77.   At all times relevant herein, Defendants made use of a software system that enabled them to secretly record confidential telephone conversations between Plaintiffs on the one hand, and Defendants on the other hand.

78.   In each of the conversations with Defendants, Plaintiffs discussed their confidential personal financial circumstances and affairs, on each account.  It was reasonable for the Plaintiffs to expect that the conversations would be confined to the parties to the conversation, and that their conversations were not being overheard or recorded.

79.   Upon information and belief, each of the conversations between Defendants and OSGOOD, and Defendants and Ewing, was a "confidential communication" within the meaning of California Penal Code section 632(c).

80.   California Penal Code section 632 *et seq* prohibits a party from recording such conversations without first informing all parties to the conversation that the

conversation is being recorded.  Defendants' confidential telephone communications with Plaintiffs were secretly and surreptitiously recorded by Defendants without obtaining consent to record such conversations.

81.    Defendants' practice of recording telephone conversations with Plaintiff violated California Penal Code section 632(a).

82.    Pursuant to California Penal Code §637.2(a)(1), Plaintiffs are entitled to recover statutory damages in the amount of $5,000 per violation.  Plaintiffs' counsel is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5.  Plaintiffs consulted with several California licensed attorneys and paid for said legal advice to enable them to bring this suit.

83.    Pursuant to California Penal Code §637.2(b), Plaintiffs also seeks a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA and to prohibit and prevent Defendants from making future extortionate threats to Plaintiff Ewing and his family.

84.    Pursuant to California Penal Code §637, Defendants have willfully disclosed the contents of Plaintiff's telephonic communications to a third party without OSGOOD or Ewing's consent.

## RICO CONSPIRACY 18 U.S.C. §1964(c)

### Second Cause of Action

### II.

**(as to Defendant McAllister, Defendant Main Street Marketing, LLC and**

**all fictitiously named defendants)**

85.     Plaintiffs incorporate by reference all of the above paragraphs of this

Complaint as though fully stated herein.

86.     Upon information and belief, Defendants, and each of them, have engaged in

the predicate acts of wire fraud and money laundering which supports the claim of

violation of 18 U.S.C. §1962(d) and (c), conspiracy to conduct racketeering affairs

through a pattern of racketeering activity.

87.     In the alternative, the enterprise is the combination of the entities named

herein as defendants.  Upon information and belief, specifically, ROBKER and

Main Streat Marketing, LLC together is the enterprise.  The period of the

conspiracy has lasted from at least May 2014 forward to present day.  Upon

information and belief, the conspiracy began in 2009 when Defendant Robker

created the enterprise.  There are two or more acts that form the basis of

racketeering engaged in by Defendants by using the wires of the United States to

illegally record Plaintiff Ewing and Plaintiff Osgood's telephonic conversations

and laundering over $10,000 of the proceeds of the wire fraud through financial

institutions, including Bank of America, Chase Bank and Wells Fargo Bank.

Defendants, including Robker and Main Streat Marketing, LLC, are also engaging

in voluminous spam calling in direct violation of 47 U.S.C. §227 to solicit

confidential information over the wires of the United States, which is made criminal under 47 USC §501.  Defendant ROBKER is associated with and a member of the enterprise as alleged and described above by Plaintiffs.  Defendant ROBKER knowingly committed at least two of the predicate acts herein described, including extortion, illegal recording and illegal robo-dialing with an ATDS in 2016.

88.    The predicate acts formed a pattern of racketeering activity by having the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics so that they were not isolated events.  The enterprise was engaged in, or its activities affected, interstate commerce.

89.    The use of the wires and the laundering of money through financial institutions affects interstate commerce.  ROBKER illegally used the wires of the United States by illegally (in violation of 47 U.S.C. §501 – a crime) calling and texting Plaintiffs in order to further enrich themselves.  ROBKER's act as described herein constitute wire fraud and said wire fraud is one of the multiple predicate acts that support this cause of action for conspiracy to commit racketeering activity in violation of 18 USS §§1961, 1962 and 1964.

90.    Plaintiffs have been injured in their business and property as a direct and proximate cause of Defendants, and each of them, willful violations of California

law as described above, which is the pattern of racketeering activity.  The financial

harm to each Plaintiff's property has been substantial and will be proven with

exactness at trial herein.

91.    Both federal and state law provide for express and explicit damages which

constitute the concrete injury to business or property required for RICO actions.

Additionally, those same statutes also provide for mandatory triple dames.

Plaintiff Ewing and Plaintiff Osgood's businesses have suffered a significant

economic downturn as a direct and proximate cause of ROBKER's racketeering

activities as described herein.

92.    Plaintiffs have lost money and revenues that could have been earned but for

ROBKER's racketeering activity.  Defendants did not act by mistake or accident

but rather acted voluntarily.  Each and every fraudulent telephone conversation that

forms the basis of this cause of action constituted an illegal use of the wires in

violation of 18 U.S.C §1343.

93.    Plaintiffs demand threefold damages as well as statutorily imposed attorney

fees as a result of Defendant's racketeering activities described above.  Plaintiffs

have had to consult with a licensed attorney at law to prosecute this action and

those attorney fees are requested to be paid or reimbursed.

94.    Defendant's actions did not result in nor were caused by the purchase of or

sale of securities.

95.     Defendant's use of the wires (18 U.S.C. 1343) within the United States went across state lines and thus constitutes the interstate commerce of the racketeering enterprise of Defendants.

96.     Upon information and belief, Defendants committed two or more acts of racketeering activity within the ten years prior to filing this cause of action. Robker has conspired with his co-defendants to violate 18 USC §1962 and §1961 as well as 47 USC §227.

97.     In addition, Defendant's pattern of racketeering activities is the constant and multiple recording of thousands of telephone calls illegally over an extended period of time as described above as well as a knowing and intentional violation of the Do Not Call registry.

98.     Each Defendant named herein engaged, directly or indirectly, in the pattern of racketeering affairs and activities described above.

99.     Defendants laundered their profits, revenues, expenses and income from their racketeering activities as defined by 18 U.S.C. 1961(1), through US financial institutions in violation of 18 U.S.C. §§1956 and 1957.  Defendant ROBKER has earned, illegally, over $10,000 in this racketeering enterprise operation and Defendant ROBKER has laundered those said funds through financial institutions in the United States.

100.   The Defendants specified unlawful activity for purposes of 18 U.S.C.

§1956(c )(7), is 18 U.S.C. §1343 as defined in 18 U.S.C. §1961(1).   Main Streat

Marketing, LLC is a money laundering organization at it very core and it even

brags about this fact on it web page as www.MainStreatMarketing.com.

## VIOLATION OF 47 U.S.C. §227 DO NOT CALL REGISTRY

### Third Cause of Action

### III.

### (as to Defendant McAllister, Defendant Main Streat Marketing, LLC and

### all fictitiously named defendants)

101.   Plaintiffs incorporate by reference all of the above paragraphs of this

Complaint as though fully stated herein.

102.   47 C.F.R. 64.1200(c)(2) prohibits calling any number on the national Do Not

Call Registry.   47 C.F.R. 64.1200(a)(1)(iii) states that no person or entity may

initiate any commercial purpose telephone call to any cellular telephone that is

already on the national do-not-call registry.

103.   Plaintiffs and Defendants do not and did not ever have any pre-existing or

established business relationship at any time.   Defendants are not a tax-exempt

nonprofit organization or a political organization.   Defendants were not calling

Plaintiffs to take a poll or count votes.

104.   Upon information and belief formed after reasonable and diligent research, Defendants do not have a do not call database.  Defendants refused to identify themselves upon request by Plaintiffs.   Defendants refused to put Plaintiffs on their do not call list even after demanding the same in writing which was replied to by Robker himself.  Defendants used and employed an automated dialer to call Plaintiffs which is made unlawful under 47 USC §227.

105.   Defendants do not have a do not call policy that is written.

106.   Defendants refused to provide Plaintiffs with a written copy of any do not call policy.

107.   Defendants do not scrub their call lists against the national do not call list or registry.

108.   Defendants do not have any personal relationship with Plaintiffs.

109.   Defendants refused to provide the full name of the caller on the telephone who initiated the call.

110.   Defendants refused to provide a telephone number or address at which the Defendants could be contacted.

111.   Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the do-not-call-list requirements under 47 U.S.C. §227(c )(5).  *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiffs may recover both $1500

statutory damages awards even if both violations occurred in the same telephone call.

112.   Defendants engaged in unsolicited advertising through the use of wires in the United States and did not have written permission to use a pre-recorded voice message.

113.   On May 4, 2016 Jerrod McAllister aka Jerrod Robert wrote as email from jerrod@mainstreatmarketing.com to Plaintiff Ewing that stated "chew [me] up and shit down [my] throat like the peace of shit [ I am]" followed by "[I] deserve to be beaten" and then ended the email with "Fuck yourself."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment against Defendants as follows:

A.     For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2); $500 plus threefold damages for intentional violation of the Do Not Call registry for each and every call, failure to maintain an do not call list, and failure to provide a written copy of do not call policy.

B.     For punitive damages in an amount to be determined with exactness at trial herein;

C.     For threefold damages pursuant to 18 U.S.C. §1964(c);

D.     For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

E.     For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 and 18 U.S.C. §1964;

F.     For pre- and post-judgment interest at the legal rate; and

G.     For any other relief that the Court deems just and proper.

H.     For costs of service of process.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and demands a trial by jury for all claims so triable.

**VERIFIED COMPLAINT**:  The statements, declarations, averments and assertions made herein are hereby verified as true, complete, and accurate under penalty of perjury under the laws of the State of California.

Dated this 4th day of October, 2016

Claudine Osgood,
Plaintiff in pro per


/s/ Anton Ewing
Anton Ewing,
Plaintiff in pro per

# DECLARATION IN SUPPORT OF FIRST AMENDED COMPLAINT

I, Anton Ewing, hereby depose, declare and state the following as true and correct under penalty of perjury under the laws of the State of California:

1.    I was called multiple times by Defendants herein and said calls were recorded without my knowledge or consent on or about May 3, 2016 and at other times.  There was no warning at the beginning of the calls.

2.    My cellular telephone was registered with the national Do Not Call list more than 31 days prior to any and all calls made to my phone.

3.    I was called by a Defendants using a pre-recorded voice robo-dialer.

4.    I received multiple emails from Jerrod McAllister, one in which he told me to "Fuck [my]self" and in another he called me a "dickhead."

5.    I have never given Defendants consent or permission to use an ATDS to call my phone.

I am competent to testify to the above stated factual assertions.

Dated this 4th day of October, 2016

/s/ *Anton Ewing*
Anton Ewing
Plaintiff in pro per