Claudine Osgood
5771 Mission Center Road #104
San Diego, CA 92108
626-641-5656

Anton Ewing
3077 B Clairemont Drive #372
San Diego, CA 92117
619-719-9640

Plaintiffs In Pro Per

# FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDINE OSGOOD, an individual<br><br>ANTON EWING, an individual<br><br>          Plaintiff,<br><br>     vs.<br><br>Main Streat Marketing, LLC, a Utah limited liability company;<br>Jerrod Robker, an individual aka Jerrod McAllister;<br>DOES 1-100;<br>ABC CORPORATIONS 1-100;<br>XYZ, LLC's 1-100.<br>          Defendants | Civil Case No. 16CV2415 GPC BGS<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S INVASION OF PRIVACY ACT;<br>CAL. PENAL CODE SECTION 630, _ET SEQ.; PC 632.7_<br>47 USC § 227 TCPA**<br><br><br>DEMAND FOR JURY TRIAL |

1.     The Honorable District Judge Gonzalo P. Curiel granted leave to file this

Second Amended Complaint by order in ECF No. 35 on January 13, 2017.

2.     Plaintiff Claudine Osgood ("Osgood") and Plaintiff Anton Ewing ("Ewing"), on behalf of themselves individually (in propria persona), allege against each and every defendant both collectively and separately, as follows against defendants JERROD ROBKER, an individual who is otherwise known as Jerrod McAllister (herein "Robker"), MAIN STREAT MARKETING, LLC, a Utah limited liability company (herein "Main Streat"), DOES 1-100, ABC CORPORATIONS 1-100, and XYZ, LLC's 1-100 (Collectively "Defendants").

3.     The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiffs.  The right to privacy and the right to be left alone is a fundamental right.

4.     "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012). In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that: Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such

calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion. Id. at § 12; see also, *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

5.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." Id. At §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

6.     Plaintiffs are informed and believe, and thereon allege, that Main Streat Marketing, LLC is, and at all times mentioned herein was, a Utah Limited Liability Company, and is headquartered in Cedar City, UT, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153 (39).

7.     Plaintiffs are informed and believe, and thereon alleges, that ROBKER is, and at all times mentioned here was, and individual citizen of the State of Utah, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153 (39).

8.     Plaintiffs received numerous telephone calls on their cellular telephones from Main Streat Marketing, LLC ("MSM"), in which MSM utilized an automatic

telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

9.     During these numerous calls from MSM to Plaintiff Ewing and Plaintiff Osgood's cellular telephone, MSM, by artificial or prerecorded voice, directed Plaintiffs to press 1 to find out if their "listing is flagged for removal."

10.     The ATDS used by MSM has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

11.     The ATDS used by MSM also has the capacity to, and does, call telephone numbers from a list of databases of telephone numbers automatically and without human intervention.  The initial part of each call did not have any live human operator of any kind whatsoever until the calls was transferred thereafter.

12.     Defendant McAllister is a self-proclaimed computer and telephony genius who has employed his knowledge in a danger, vindictive and harmful manner.

13.     The telephone numbers MSM called were and are assigned to a cellular telephone service for which Plaintiffs incurred a charge for incoming calls pursuant to 47 U.S.C. § 227 (b)(1).

14.     Plaintiffs at no time provided "prior express consent" for MSM or ROBKER to place telephone calls to Plaintiff's cellular telephone with an artificial or prerecorded voice utilizing an ATDS as proscribed under 47 U.S.C. § 227(b)(1)(A).

15.     Plaintiffs had not provided their cellular telephone number to MSM or ROBKER. Plaintiffs were not a customer of MSM. Plaintiffs had no "established business relationship" with defendants, as defined by 47 U.S.C. § 227(a)(2).

16.     Defendant Jerrod McAllister sent several false and fraudulent emails to Plaintiff Ewing that stated very negative and extremely derogatory things toward Ewing.  Many of those said emails were frightening to Ewing and caused Ewing substantial emotional upset and stress.  McAllister's emails were unacceptable in a civilized society and his conduct cannot be tolerated.  Importantly, the Court should note that the Hyde & Swigart law firm has also just sued the exact same defendants for substantially similar TCPA violations.  The Court is request to take judicial notice of 16-CV-02292-MMA-JLB, as well as each and every filing therein, which are incorporated by this reference as if fully set for herein as exhibits to prove that these Defendants are liable, responsible and should be held accountable.

17.     Upon information and belief, Jerrod Robker is Jerrod McAllister and Jerrod McAllister is Jerrod Robker.  Wherever the name Robker is contained in this Complaint, it hereby means and is intended to mean McAllister also.  Wherever the word "Defendants" is used herein it means Jerrod Robker, Jerrod McAllister and Main Street Marketing, LLC, a Utah limited liability company.  Notwithstanding

MSM is a defunct and defaulted LLC and it not allowed to do business in any state and is not allowed to defendant itself in any court in this state.

18.     Plaintiffs have also had their cell phone batteries depleted from the plethora of repeated calls which cost time and money to recharge the batteries of their phones.  During the recharging process, Plaintiffs lost potential income from paying clients that could have called.  Plaintiffs were also charged by the cell phone service carrier for the significant number of minutes that were used up by Defendant's illegal calls.  Plaintiffs also lost time and money that could have been earned during the calls that were placed by Defendants.  This loss of income, the expense of recharging batteries, and the cost of used up airtime minutes are all concrete injury in fact to Plaintiffs.  Moreover, the violent and bizarre threats actually made by Defendants to Plaintiffs are concrete injury in fact.  The repeated stalking by Defendant Robker is an injury in fact against Plaintiffs.  On January 13, 2017, Defendant Robker emailed Plaintiff Ewing and called Ewing a "pussy" and a "creep."  This was done right after this District Judge handed down his ruling that same day.

19.     Plaintiffs are victims of Defendants repeated criminal violation of PC §653m by Defendant's non-stop annoying and harassing calls to fraudulently sell Defendants "search engine optimization" as a certified and licensed (albeit fake) agent of Google.com.  Defendants have hundreds of complaints on Yelp.com, the

BBB and ripoffreport.com about Defendant's scamming other Americans out of money and refusing to stop debiting their bank accounts or stop charging their credit cards for Defendant's bogus monthly internet monitoring fees.

20.     Plaintiff's reserve the right to re-assert a cause of action for conspiracy to violate RICO after discovery and depositions.

21.     Plaintiffs have had their cellphone batteries depleted by the illegal telemarketing calls of Defendants.

22.     Plaintiffs have suffered a significant and serious loss of time in having to answer Defendant's illegal telemarketing calls again and again.

23.     Plaintiffs have suffered a loss of money for the electricity needed to recharge the cellphone batteries as a result of Defendant repeated TCPA telemarketing call violations.

24.     Plaintiffs have suffered increased cellphone bills from their respective carriers due to Defendants usage of minutes in the monthly plan for each Plaintiff.

25.     Plaintiffs have lost potential income from having to listen to the lengthy sales pitch and getting transferred from one agent to another at Defendant's business.  Plaintiffs had to listen to each call in order to finally determine that it was not actually Google.com calling but rather Defendant's scam operation. Plaintiff could have met with other clients during each of these harassing and annoying calls by Defendants and therefore lost real money and real income.

There is also the lost time that Plaintiffs could have been earning income and revenues that were lost by having to wait for their cellphones to charge back up.

26.     Plaintiffs have never had any prior business relationship with any of the Defendants.  Plaintiff Osgood's cellular telephone number 626-641-5656 is a private personal cellular telephone number.  Plaintiff Ewing's cellular telephone number 619-719-9640 is a private cellular telephone number.  Defendants were not and did not call a business phone.  Defendants used an automatic telephone dialing system ("ATDS") as defined by Title 47 and the Federal Communications Commission to robo-dial (or automatically dial) with a prerecorded message to call and record Plaintiffs' cell phone, for telemarketing purposes.  Each Plaintiff's cell phone number is registered on the National Do Not Call Registry ("DNC").  Plaintiffs hereby allege a violation of the DNC registry by Defendants which directly harmed Plaintiffs and invaded their right to privacy.

27.     This Complaint is written by unrepresented pro se plaintiffs who are not members of the bar and is to be given wide latitude as such. *Hebbe v. Pliler*,  611 F.3d 1202 (2010)  "Pro se documents are to be liberally construed" and "'must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)  The *Estelle* case has been upheld 8680 times and never overruled or questioned.  *Estelle* has also been cited over 34,000 times.

28.     In *Clark v. Bibb County Board of Education*, 174 F.Supp.2d 1369 (M.D.Ga. 2001), the court succinctly stated:  because plaintiff is representing himself in this case, the Court must observe that pro se litigants are entitled to wide latitude when construing their pleadings and papers.  See *SEC v. Elliott*, 953 F.2d 1560, 1582 (11th Cir.1992).  One court has articulated the underlying policy rationale for this rule as follows: "Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  See also, *Middleton v. City of Lakeland*, 830 F.Supp. 1449, 1451 (M.D.Fla. 1993) ("The Court must read Plaintiffs *pro se* allegations liberally, holding them to a less stringent standard than those drafted by an attorney.")  See *In re O'Malley*, 252 B.R. 451, 456-457 (N.D. Ill. 1999) (though a judge is not to become an advocate for *a pro se* litigant, the court does have a duty to "take appropriate measures that will permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds.") (internal citations omitted);  *In re Barrows*, 171 B.R. 455, 459 (D. N.H. 1994) (*pro se* parties' pleading is entitled to a more lenient construction than might otherwise be required in litigation in which both parties are represented by counsel)

29.     The U.S. Supreme Court has made clear that a *pro se* complaint is held to "less stringent standards than those pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Brown v. Califano,* 75 F.R.D. 499 (D.D.C. 1977).  The equitable reasons for affording *pro se* plaintiffs wide latitude in constructing their pleadings are simple and obvious.

30.     As one judge has explained, *pro se* litigants often "are ignorant of the niceties of state and federal practice, and lack the contacts with the legal profession that the more well-to-do and assured of our society rely on to prevent having claims barred by statute of limitations." *Stewart v. United States Postal Service,* 649 F. Supp. 1531, 1535 (S.D.N.Y. 1986) (quoting *Singleton v. City of New York,* 632 F.2d 185, 196 (2d Cir. 1980)

## STANDING

31.     Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant;

    c. and is likely to be redressed by a favorable judicial decision. See, *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560. 32.

In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (*Id.*).

For an injury to be "concrete" it must be a de facto injury, meaning that it actually exists. In the present case, Plaintiffs were called on their cellular phones at least four times by Defendants. Such calls are a nuisance, harassing, an invasion of privacy, a waste of valuable time that could have been spent on economically productive activities, a serious disruption their businesses and an expense to Plaintiffs both in terms of lost minutes and additional phone charges from the phone carrier and increased electrical bills due to depleted batteries. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All of these injuries are concrete and de facto. Moreover, there is a substantial amount of time, money, effort and expense involved in trying to track down, sue and enjoin law-breakers like Defendants from ever calling Plaintiffs ever again. Make no mistake, having to sue Defendants to get them to stop calling is a very serious, very concrete and extremely de facto injury.

For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) at 7, 136 S. Ct. 1540. In the instant case, it was Plaintiff's phone that was called and it was Plaintiff themselves who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by MSM's persistent phone calls using an ATDS. Finally, Plaintiff alone are responsible to pay the bill on their cellular phone and for their electric utilities used. All of these injuries are particularized and specific to Plaintiffs.

### The "Traceable to the Conduct of Defendant" Prong

The second prong required to establish standing at the pleadings phase is that Plaintiffs must allege facts to show that their injury is traceable to the conduct of Defendants.

In the instant case, this prong is met simply by the fact that the calls to Plaintiff's cellular phones were placed either, by Defendants directly, or by Defendants' agent at the direction of Defendants. This fact has been admitted to and confessed to in writing by Defendants. There is no doubt and no question that Defendants are the direct and proximate cause of Plaintiff's injury.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

In the present case, Plaintiff's Prayers for Relief include a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs.

Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.  If Defendants disobey this Court's order to cease and desist from future telemarketing of Plaintiff, the Defendants can and will be incarcerated pursuant to this Court's contempt powers.  That will stop Defendants from violating the injunction.   Defendants will not be able to engage in telemarketing from the inside of a prison cell.  Thus this Court will be able to redress the violations.

Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiffs has standing to sue Defendants on the stated claims.

## JURISDICTION TO HEAR THIS COMPLAINT IN FEDERAL COURT

32.     Plaintiff Claudine Osgood (herein "OSGOOD") and Plaintiff Anton Ewing (herein "EWING") each bring this action for multiple violations of California's Privacy Act and California Penal §630, et seq. by Defendants, and each of them, as hereinafter described.  There is complete diversity of citizenship and the amount in controversy far exceeds $75,000.  Moreover, the TCPA is a federal law and thus the Court have federal question jurisdiction.

### Standard Applicable to a Preliminary Injunction

33.     To demonstrate her entitlement to a preliminary injunction, Plaintiff Osgood and Plaintiff Ewing must show (a) that they will suffer irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiffs' favor.

34.     This Court has personal and subject matter jurisdiction and venue over federal questions and may hear pendant state law violations.  Any claim or averment by defense counsel that TCPA and/or RICO claims cannot be heard in federal court would be frivolous and subject counsel to sanctions by the Court.  See *Mims infra.*

35.     The Court is requested to enter an order for preliminary injunction to prohibit Defendants from calling or spamming Plaintiffs and to prohibit Defendants from selling their personal confidential information to third parties.

36.     The Court is also request to enter an order for preliminary injunction prohibiting Defendants from telling, informing or disclosing to the public that they are licensed and certified by Google.

**FICTITIOUS DEFENDANTS**

37.     Does 1-100, ABC Corporations 1-100 and XYZ, LLC's 1-100, are each sued fictitiously because their true names are currently unknown but leave to amend is hereby reserved and amendment will be made to properly name said defendants as soon as discovery allows therefor.   All fictitiously named defendants are accused of and responsible for each and every violation and causes of action described herein.   Just because the Complaint does not repeat the words "fictitious defendant" over and over again does not in any way remove them from liability or responsibility.

**GENERAL ALLEGATIONS**

38.     Plaintiff Claudine Osgood is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California.   Plaintiff Anton Ewing is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California

39.     Defendant ROBKER (or McAllister) was doing business in California in May, June, July and August of 2016.  ROBKER and Main Street Marketing, LLC,

purposefully directed their activities into California and have knowingly and intentionally availed themselves of the benefits and protections of California law.

40.     Main Streat Marketing, LLC is not licensed, in any manner whatsoever, to sell loans in California.  Main Streat Marketing, LLC fraudulently stated on each telemarketing call that it was "certified" and "licensed" by Google.   In at least one of the illegal calls made by Defendants to Plaintiff Ewing, the call was received by Ewing prior to 8:00 AM Pacific time (California time).  It is illegal to make telemarketing calls prior to 8:00 AM in the time zone in which the phone is located.

41.     On Defendant's web page at http://mainstreatmarketing.com/ it claims that it has three offices in "southern California" when in fact it does not have even one office and Main Streat Marketing, LLC is not even registered to do business in California with the Secretary of State.  According the certified filings with the Utah Secretary of State, Main Streat Marketing, LLC claims that it provides "legal services" and practices law as "NAICS Title: 5411-Legal Services".  See https://secure.utah.gov/bes/details.html?entity=9587705-0160

42.     On Yelp.com, Defendant Main Streat Marketing goes by the fictitious name Local Verifications and has the following complaints:

https://www.yelp.com/biz/local-verifications-cedar-city



a. **Dana C.**

b. **Fort Worth, TX**

10/20/2016

My husband took their unsolicited call and they talked him into their services not really understanding what they were

selling and when we tried to ask for a refund they got really hateful and hung up on us. Thankfully we used American

Express and are able to sic them on this company, its a pay now and then they want more money to advance you SCAM!!!!



c. **Jackie S.**

d. **West Chester, PA**

*7/23/2016*

This business is a SCAM! Don't be a victim and fall for their lies. Hang up right away when you get the

call that your google business listing is incomplete. They took $299.00 from me and I got nothing. I just

went on google to view my listing and it wasn't even there. I was wondering why I have not received any

phone calls. I will pursue them further until I get satisfaction. I am tired of people taking advantage of

others. The BBB and FTC will be hearing about this.



e. **Nadia B.**

f. **Indianapolis, IN**

1

2  10/5/2015

3  illegal robo-call for a google listing "scam" this is a scammer!!

- 
  o

  **Susan M.**

  o  **Los Angeles, CA**

  o  **0** friends

8  5/3/2016

9

10  This appears to be a fraudulent operation.  I have been hounded by calls telling me that my google map location and name needed to be verified.  They stupidly convinced me that they could make all of the robo calls stop and protect my google listing.  They billed me $359 and not only did they do nothing, the name on my invoice is incorrectly spelled and they will not return phone calls.  This is a business that should be reported to the FTC.

11

12

13

1

- 
1

1  o  **Aaron's C.**

   o  **Jacksonville, FL**

17

18  8/18/2015

1  o  First to Review

20  They've called our business so many times their calls have become an interruption to our business.  It is harassment. I've instructed them to remove our information from their call list.  So far they haven't - we're still getting calls.

21

2

2  •

2  o  **Peter P.**

   o  **Maricopa, AZ**

2  o

Was contacted by this company to have my google listing updated/verified. After getting the information that I needed such as phone number, web address, name of sale person, ect. I was very polite in getting this information and they were happy to give it out thinking that I was going let them charge me for a FREE google listing. I stop the sale pitch when I had the info and told the sale person that they are in violation of the do not call list that I am on and requested that they are to send me a copy of their do not call policy and to put me on the do not call list. If failure to do so it is a offence and is able to be enforced by the FTC with the information that I have. Also if they continue to call there could be a civil action that I can take because the phone number is in my state and came to my state. I have read the 59 page report from the FTC on "Rules for the Telemarketing Sales". This is for the company that is going to start a telemarketing program and is to be study and abided by.

When I go to the wed site that I was given it is in a foreign languish, even was on line when given the site and I questioned this to the sale person, was told that theirs comes up in English. Anyway there were a number of violations that took place to many to mention, they have 3 weeks to send their copy of the do not call policy, if not will be reported and complaint filed, since I have their contact information should be easy to file the complaint. My company has always been verified on google, so when I get these type of calls I know that they are fishing for something, so I just play along with them and get to the point when I know I have what I need. I even called back to the number on my caller ID and the recorded message would not let me select option 2 to remove my number for the list. So this would be the 2nd violation of the FTC rules, not having a way to remove your number. I guess I could go on and on but I think what I have written will be enough help to others to make decision about this company. Please get informed about your rights and file complaints even if you think your wasting your time. Better to do this than sitting and writing reviews like this one.

43.     Main Streat Marketing, LLC is a defunct and suspended entity that is not in good standing with the Secretary of State of Utah or California and thus it constitutes a criminal act under California's Revenue and Taxation Code for an attorney to represent said LLC in a court of law.  See R&T §19719.

44.     https://secure.utah.gov/bes/details.html?entity=9587705-0160  The Court is requested to take judicial notice of the fact that Defendant Main Streat Marketing, LLC is not in good standing with the Secretary of State of Utah or the Secretary of State of California.  Said defendant is not allowed to file motions or any other

pleading in this Court.  To do so would constitute a criminal act under R&T §19719.

## *MAIN STREAT MARKETING LLC*

**Entity Number:** 9587705-0160
**Company Type:** LLC - Domestic
**Address:** 333 N Main Street Cedar City, UT 84721
**State of Origin:**
**Registered Agent:** Jerrod Robker
**Registered Agent Address:**
333 N Main Street
Cedar City, UT 84721


Status: Delinquent


45.     https://www.bbb.org/utah/business-reviews/advertising-agencies-and-counselors/local-verifications-llc-in-cedar-city-ut-22364719  The Better Business Bureau has too many complaints to list and shows an F rating.  However, the Court is requested to review this web page and read the voluminous complaints for illegal telemarketing.  The number of FCC complaints for illegal telemarketing against Defendants is beyond comprehension.  These Defendants are truly vicious and criminal violators of the TCPA with their robo-dialer ATDS systems and scams.  It might be a different story if the Defendants actually sold a real product and did not

just rip Americans off.  This Defendant LLC and its CEO are the racketeers that Congress sought to incarcerate under RICO.

46.      Defendants Robker/McAllister is not a hard working small business owner; rather, he has demonstrated that he is a rich-kid who flaunts his wealth, harasses those who get in his way and he is a bully with an arrogance that exceeds all bounds.  The sickening emails McAllister has sent, and continues to this day to send, are just the tip of the iceberg.

47.      This action also arises out of Defendants' violations of California's Invasion of Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), which prohibits the recording of confidential communications without the consent of all parties to the conversation as well as violations the Telephone Consumer Protection Act, 47 U.S.C. §227.  Additionally, as a pendant claim, Defendants have violated California Public Utility Code section 2873 and 47 USC §227(b)(a)(A) by using an automatic telephone dialing system and automated answering device to call Plaintiffs on their private cellphones.   Moreover, Defendants have also violated 47 C.F.R, §64.1200 and thus harmed Plaintiffs.

48.      Upon information and belief and pleading in the alternative, during the period relevant herein and continuing presently, Defendant ROBKER was and continues to be the alter ego of Defendant Main Street Marketing, LLC.

49.    Upon information and belief, on August 11, 2016, Defendant ROBKER, or one of its employees, agents or contractors at its direction and control, called Plaintiff Osgood from 626-472-1821 on Plaintiff Osgood's personal cellular telephone at 626-641-5656 for which OSGOOD has expressly informed the public to not make solicitation calls and/or texts via national do-not-call list registration as well as other public warnings.

50.    Additionally, Osgood informed Defendant Robker that her phone was on the do not call registry and asked for a copy of the internal do not call policy; however, Main Streat Marketing, LLC continues to illegally call Osgood and Ewing over and over again to telemarket Main Streat Marketing, LLC's scam business program.   Google has never licensed, approved or registered Defendants to do anything for Google let alone abuse and interfere with Google's search engine results.  For McAllister to actually make this claim if pure fraud.

51.    Plaintiffs hereby allege that a personal cellular phone is not even required to be listed on the National Do Not Call list in order to receive protection from spam telemarketers.  Main Streat Marketing, LLC is not licensed to do business in California.  Main Street is currently violating California tax laws and is criminally evading California taxes.   This act alone has indirectly harmed Plaintiffs.

52.    Each Defendant has also failed to register as a telemarketer with the California Attorney General pursuant to California Business & Professions Code

§17511 et seq. and has also failed to pay the $50 application fee, to file the Form A and to post the required $100,000 bond. This failure to act is a criminal act under B&P 17511.9 as a failure to register as indicated above.

53. During the period relevant herein, ROBKER and Main Streat Defendants, including Robker's agents, were a provider of information technology and centralized operational and back-end support services to the ROBKER, and all of its subsidiaries. As such, ROBKER, including Main Streat Marketing, LLC, provided the infrastructure for dialing and recording the call and/or text at issue in this litigation. ROBKER used automated telephone dialing systems and recording devices at the direction of Main Streat Marketing, LLC, and its relevant subsidiaries.

54. ROBKER also managed the call and/or text centers and telephony architecture and telephone recordings for the enterprise, and its subsidiaries, including Defendant ROBKER and Main Streat Marketing, LLC. ROBKER continues to manage call and/or text centers and recordings on behalf of the racketeering enterprise business. Defendant ROBKER is technologically sophisticated and Defendant ROBKER employs this high level of knowledge and know-how to run his criminal syndicate.

55. In *Gomez vs. Campbell-Ewald Co*., 768 F.3d 871; 2014 U.S. App. LEXIS 18019; 61 Comm. Reg. (P & F) 363, the 9th Circuit held that all the actors in the

telemarketing chain are vicariously liable for the acts of eachother.  The 9th Circuit also expressly held that there is in fact standing under Article III to sue under the TCPA.  The US Supreme Court upheld this holding on January 20, 2016.  Each Defendant named herein, including the fictitiously named defendants, is vicariously liable for the acts of its agents and for eachother's acts.  Each defendant is jointly and severally liable for the acts of eachother.

56.     Moreover, ROBKER continues to monitor and record telephone calls to California residents, including each Plaintiff, devoid of the legally required disclosure.

57.     During the relevant period herein, thousands of telephone calls with individuals in California were recorded by ROBKER's telephone systems at the direction of each of the other Defendants.

## JURISDICTION OVER ALL CLAIMS AND ALL PARTIES

58.     Jurisdiction is proper in the Superior Court because Plaintiffs are residents of San Diego, California.   The Superior Court of California has concurrent jurisdiction over all TCPA and RICO claims.

## VENUE

59.     Venue is proper in San Diego County because Plaintiffs reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in San Diego County.  Each of the Defendants has sufficient minimum

contacts with San Diego County and the State of California, and otherwise purposely avail themselves of the markets in this state and San Diego County. Defendants knowingly and intentionally called area code 619 and 626 which they had reason to know are solely and strictly within California.

## PARTIES

60.    Plaintiff CLAUDINE OSGOOD and ANTON EWING are residents of San Diego County, California whose confidential telephone communications were unlawfully recorded by ROBKER Defendants during the period relevant herein. Plaintiff OSGOOD had placed her telephone number for her cellular phone on the Do Not Call registry more than 31 days prior to the offending calls.

61.    In August, 2016, Plaintiff OSGOOD was knowingly and intentionally called multiple times by ROBKER Defendants, or its agents, based on a telephone list obtained by ROBKER.  An employee named Machayla made multiple calls to Plaintiff Osgood and he or she (Machayla) is an employee of Defendants.

62.    A Main Street Marketing, LLC employee by the name of Kim Swanson and Cory Williams called Plaintiff Ewing.   Plaintiff Ewing was called over and over again by Defendants even after Ewing demanded that they stop calling.  Main Streat Marketing, LLC ignored litigation threats (CCP §47b) and Plaintiff's demands to cease and desist.

63.    Devoy and Cory Williams confessed that Main Streat Marketing, LLC uses and employs a third party company in India to originate its telemarketing calls. Main Streat Marketing, LLC employs a third party company in India in order to knowingly and intentional evade United States federal and California criminal laws that prohibit telemarketing (47 USC §501) and illegal recording (Penal Code §632.7).

64.    Main Streat Marketing, LLC and Robker are engaged in a conspiracy to violate federal and state criminal laws prohibiting unlawful telemarketing and unlawful recording, through the use of the wires of the United States.  Cory Williams, as an agent of Defendants, admitted that Main Streat Marketing, LLC records calls and does not provide any advance warning thereof.

**Defendants**

65.    Defendant JERROD ROBKER is located in Utah.

66.    Plaintiff is informed and believes, and therefore alleges, that Defendant ROBKER owned the call centers that were used to make the non-consensual recordings of confidential communications that are at the core of this matter.

67.    Plaintiff is informed and believes, and therefore alleges, ROBKER himself, also supervised and conducted the internal affairs and daily business operations of Defendant Main Streat Marketing, LLC in such a way as to treat all of its subsidiaries, including ROBKER as their alter ego, by engaging in conduct, acts or

omissions including controlling ROBKER to such a degree as to render Main Street a mere instrumentality of Defendant ROBKER. This allegation is plead in the alternative.

68.     Plaintiff is informed and believes, and therefore alleges, Defendant ROBKER, its agents and employees constitute a racketeering enterprise through Main Streat Marketing, LLC. Said enterprise used and employed the wires of the United State of America to engage in serious fraudulent and criminal activity by robo-dialing or ATDS calling to Plaintiff Osgood and Plaintiff Ewing's California cellular telephones. These calls crossed state lines from Utah into San Diego, California and thus constitute the predicate act of wire fraud in that Defendants, including Robker, and Main Streat Marketing, LLC, used the telephone infrastructure of the United States to commit their interstate criminal activities that were continuous and ongoing for several years, including 2015 and 2016. Defendant ROBKER is in the business of illegally buying and selling lists of names of persons on the National Do Not Call list so that those persons get and receive calls from spammers and telemarketers. Defendant ROBKER knows that all of the calls made are recorded without permission or proper disclosure of the recording.

69.     Upon information and belief, a company by the name of Local Verifications, LLC, a California LLC formed in 2012 is also connected the Defendants.

Plaintiffs reserve the right to name said company as one of the Doe defendants after discovery proves it a co-conspirator. The same holds for Local Verifications, LLC, a Utah LLC with Jerrod Robker as the agent for service of process.

70. Jerrod McAllister also uses a BBB F rated company called Local Verifications, LLC to engage in his illegal telemarketing and other racketeering activities. This company is defaulted by the Secretary of State.

71. Plaintiff Osgood and Plaintiff Ewing are informed and believe, and therefore allege, that defendant ROBKER's comprehensive right to control is sufficient to meet the agency standard under California law.

72. Plaintiff Osgood and Plaintiff Ewing are informed and believe, and therefore allege, during the relevant period described herein, Defendants, and each of them, each aided and abetted, encouraged and rendered substantial assistance to each other in furthering the CIPA and RICO violations. In addition to acting on their own behalf individually, Defendants, and each of them, are and were acting as the agent, alter ego, servant, employee, joint venturer, and representative of, and with the knowledge, consent and permission of, and in concert with the other defendants. The actions of the defendants as described in this complaint all fall within the course, scope, and authority of the agency, service, and employment relationships that exist between the defendants, and as such, create joint ventures

between all of the defendants to the extent that binding legal relationships do not already exist.

73.     The actions and representations of Defendants constitute a conspiracy on the part of Defendants, including Robker and Main Streat Marketing, LLC, for the purpose of such actions and representations made to the Plaintiffs of this cause of action.  ROBKER illegally and unlawfully engaged in the conduct of an enterprise through a pattern of criminal activity.  Said conduct occurred over an extended period of time so as to form a pattern as defined under Title 18.  The enterprise consisted of Defendants ROBKER, Main Street Marketing, LLC and each fictitiously named defendant.  Plaintiffs are mindful of the Court well written opinion dated January 13, 2017 and have thus removed the RICO claims.  However, the Plaintiffs believe, in good faith, said RICO claim will be supported by detailed evidence that can and will be obtained through discovery.  Thereafter, Plaintiff reserve the right to reassert this claim and will respectfully present such evidence to the Court and request leave to add the RICO claim back in.  Rule 9(b) requires extensive specific details which Plaintiffs do not have readily available, but which Robker/McAllister will be required to produce after the ENE and Rule 26(f) conference.

74.     The enterprise was controlled, operated, directed and managed by Defendant Main Streat Marketing, LLC, Defendant Robker and other persons that are yet to

be determined and remain unknown as of the time of filing this Complaint.

Defendant Main Streat is engaging in organized crime with its co-conspirator

Jerrod Robker.

75. Wire Fraud under 18 USC §1343 is present in this case with these named

defendants when Defendant ROBKER and Defendants Main Streat Marketing,

LLC, having devised or intending to devise a scheme or artifice to defraud, that is,

their criminal robo-dialing and illegal telemarketing (47 USC §501), or for

obtaining money or property by means of false or fraudulent pretenses,

representations, or promises, transmitted or caused to be transmitted by means of

wire, radio, or television communication in interstate or foreign commerce, any

writings, signs, signals, pictures, or sounds for the purpose of executing such

scheme or artifice. In this case Defendant ROBKER called Plaintiffs personally

and caused Plaintiffs to be texted and recorded in violation of California's criminal

law. Defendant ROBKER's call constituted a scheme and artifice to defraud

Plaintiffs and to obtain money and property from Plaintiffs. Defendant ROBKER

attempted to get Plaintiffs to send him money. The calls were transmitted by

means of wires in interstate commerce through the telephone and internet lines of

the United States. Defendant ROBKER made telephone calls to Plaintiffs to

engage in wire fraud and to commit the criminal acts expressly stated herein,

including criminal acts of recording calls and criminal acts of ATDS robo dialing

of cell phones owned by Plaintiffs.  For purposes of the particularity requirement,

Defendant ROBKER or his agent called on August 11, 2016 at 11:37 AM and

multiple other times.   Again, Plaintiffs are not, in this Second Amend Complaint,

alleging a RICO conspiracy but rather, are putting Defendants and their attorneys

on express notice that discovery of facts to support this claim are intended.  Even

though the late President Nixon said you can indict a ham sandwich, RICO

pleading standards appear to be rather high.

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL TELEPHONIC COMMUNICATIONS WITH PLAINTIFFS

76.    In August, 2016, plaintiff OSGOOD was called multiple times by ROBKER

and his co-Defendants.  ROBKER and his co-Defendants engaged Plaintiff

OSGOOD in confidential telephone communications.  To the best of Plaintiff

OSGOOD's recollection, she spoke to ROBKER Defendants' personnel several

times, including employee Macheyla, in addition to being called by the ROBKER

and/or ROBKER robotic Echo system.

77.    On any of the occasions when she spoke telephonically with ROBKER

Defendants' personnel, Plaintiff OSGOOD and Plaintiff Ewing were not advised at

the outset of the calls that the calls might be recorded by ROBKER Defendants.  In

light of the sensitive nature of the personal and confidential information being

discussed during the telephone calls, Plaintiff OSGOOD and Plaintiff Ewing had an objectively reasonable expectation of privacy – in that they reasonably expected that the conversations were not being overheard, monitored and/or recorded.

78.     Defendant ROBKER refused to provide Plaintiffs with a written copy of its do not call policy and refused to take Plaintiff Ewing or Osgood's name and number off the telemarketing list.  Robker used an ATDS telephone dialing system to automatically dial Plaintiff Ewing's and Plaintiff Osgood's phone number and sell business loans.  Robker has failed to train his personnel, agents and employees on the Telephone Sales Rule promulgated by the FTC.

79.     As Judge Easterbrook of the Seventh Circuit recently explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act...is well known for
> It's provisions limiting junk-fax transmissions. A less-litigated
> part of the Act curtails the use of automated dialers and
> prerecorded messages to cell phones, whose subscribers often
> Are billed by the minute as soon as the call is answered--and
> Routing a call to voicemail counts as answering the call. An
> Automated call to a landline phone can be an annoyance; an
> Automated call to a cell phone adds expense to annoyance.
> *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 638 (7th Cir. 2012).*

80.     Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the do-not-call-list requirements under 47 U.S.C. §227(c )(5).  *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiffs may recover both $1500

statutory damages awards even if both violations occurred in the same telephone call.

## DEFENDANTS' IMPROPER AND ILLEGAL
## RECORDING POLICIES AND PRACTICES

81.     Defendants' policies and practices, during the period relevant herein and continuing to the present, were to record confidential telephonic communications with California individuals, without advising them at the outset of each telephone call that it is being recorded, in violation of California Penal Code §630, *et seq*.

82.     ROBKER and all other Defendants did not obtain consent to record any of the telephone conversations prior to the time they recorded the calls.  Main Streat Marketing, LLC has admitted that it records its telemarketing calls and that its third party agents from India and elsewhere record telemarketing calls without warnings.  This is against California law.

83.     ROBKER designed and implemented an extensive call center system for the thousands of consumer transactions serviced by its various affiliates and subsidiaries.  During the times relevant to the CIPA claims made herein, the system included 3 domestic and international call centers from which customer calls are placed and received on behalf of ROBKER business units.

84.     ROBKER and Main Streat Marketing, LLC operate, implement and manage the architecture and infrastructure necessary to meet the call recording strategies

set by ROBKER and all Defendants. At the direction of the relevant business unit subsidiary of ROBKER Racketeering infrastructure dialed telephone numbers to California individuals and recorded the telephone calls. The volume of calls and texts was extraordinary. At each call center, defendant ROBKER, including Main Streat Marketing, LLC, used databases and servers to store and retrieve the recordings.

85.     ROBKER and Main Streat Marketing, LLC continue to maintain call centers and oversee recordings in connection with ROBKER's line of business. Plaintiff Osgood and Plaintiff Ewing will seek, demand and argue for punitive damages at trial herein to send a message to Defendants and others similarly situated that violation of California's criminal and federal stalking, terrorism and harassment laws are not allowed. Defendants also violated California Penal Code §653m by repeatedly and in a seriously annoying manner, calling each Plaintiff over and over again. No permission or subsequent permission to call was ever given or granted in any manner whatsoever by either Plaintiff for Main Streat Marketing, LLC or any other defendant or fictitious defendant to call either of Plaintiff's cell phones.

86.     The central automated telephone dialing system ("ATDS") was, and currently continues to be, used by Defendants to initiate up to two thousand calls a day. The ATDS is used by all the subsidiaries of ROBKER RACKETEERS. Approximately 10% or 1,000 of these calls were made to California consumers.

Defendants' policy and practice was to set the ATDS to call the consumer's home, business, and cellular telephones up to five times a day. Depending on the instructions given by each business unit, 15%-20% of all of the telephone calls (at times up to 100% of the calls in certain businesses) were set to record by ROBKER and recorded, using a centralized call recording hardware and software. Recording began when the customer was connected with a call center agent.

87. Defendants together strategically managed the ATDS to maximize resources, i.e., by employing a consistent process across the businesses for determining how and when calls would be made through the ATDS and scoring or rating the calls for advance treatment through the ATDS.

88. ROBKER's businesses directly loaded customer information onto ROBKER's "mainframe" or "back-end" computer system, which includes the ATDS. During the day, accounts would be loaded into dialer tables, and the tables would then be run through the dialer. Once the ATDS would initiate the call, and a customer would answer, ROBKER's "automated call distributor" would then route the call to an available agent. Defendants called Plaintiff OSGOOD at 626-641-5656, her personal cellular telephone. Plaintiff OSGOOD was physically present in California during each and every illegally recorded telephone conversation alleged herein. At the same time the call was routed, the agent received the customer's information on a computer screen. If a recording of the telephone

communications was going to be made by the recording system, the recording would begin when the Defendants' agent picked up the call.  The agents do not have the ability to stop or start call recording.  The agents do not know which calls are being recorded and have admitted that all calls are recorded.  An employee of ROBKER stated that all calls are recorded and there is no warning or disclosure of such recording to the consumer during the entire call.

89.    With respect to whether the telephone agents themselves provide the call recipients with a verbal advisement that the call may be recorded, Defendants admit to a policy whereby the agents ***do not provide any advisement*** to customers that the calls are being recorded.

90.    For calls related to ROBKER'S business, Defendants are required, pursuant to California Penal Code §630 et seq., to give a verbal advisory that the call is being recorded before speaking to a customer.  Defendants have previously admitted that based on an evaluation of a sample set of recordings, a verbal advisory was not given.

91.    CIPA prohibits the recording of communications without first obtaining the consent of all parties to the conversation. See Cal. Penal Code §632.7. PC Section 632.7 does not require that a communication be confidential in order to be provided protection from interception or recording. The call and/or text of the section notably contains no reference to "confidential communications;" moreover,

more than just confidential communications are protected. ALL communications that are recorded without the consent of both parties to the communication are protected.

92.    The right protected by Section 632.7 is not against the betrayal of a party's confidence by the other party. Rather, Section 632.7 protects against simultaneous dissemination to an unannounced second auditor without the party's consent.  Any communication, regardless of the intimacy of the facts discussed, that is recorded devoid of notice of recordation, is a violation of California law.

93.    Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal. Pen. Code §632(c).   In other words, a communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard."

94.    In light of the sensitive nature of the personal financial and related information being discussed in the calls with Defendants, Plaintiffs had an objectively reasonable expectation of privacy – in that OSGOOD and Ewing reasonably expected that the conversations were not being overheard, monitored and/or recorded.

95.    The absence of any such advisement would lead a California consumer to reasonably anticipate that his/her telephone call was not being recorded.

96.    In violation of the CIPA, Defendants recorded Plaintiffs' telephone calls without OSGOOD or Ewing's express consent.  The exhibits attached to this complaint show in detail the exact numbers that Defendants used to call Plaintiffs.

97.    Defendants have engaged in a pattern and practice of recording a substantial percentage of the telephonic communications with individuals located in California.

98.    Defendants intentionally, and without the consent of all parties, by means of an electronic recording device, recorded confidential telephonic communications with Plaintiff OSGOOD and Plaintiff Ewing.

99.    The complaint here is timely filed.  The applicable statute of limitations for violations of the CIPA is one year (Cal. Civ. Proc. Code §340(a)).

100.    This Complaint is thus timely filed and Defendants have been on timely notice.  Plaintiffs have tried diligently to resolve this matter before filing.

**CAUSES OF ACTION**

**First Cause of Action**

**I.**

**(For Statutory Damages and Injunctive Relief for Violations of Cal. Penal Code Sections 632.7 and 637.2(a)-(b))**

**(as to Defendant McAllister, Defendant Main Streat Marketing, LLC and**

**all fictitiously named defendants)**

101.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

102.   At all times relevant herein, Defendants, including Robker and Main Streat Marketing, LLC routinely communicated by telephone with Plaintiffs in connection with attempts to sell products of Defendants.

103.   At all times relevant herein, Defendants made use of a software system that enabled them to secretly record confidential telephone conversations between Plaintiffs on the one hand, and Defendants on the other hand.

104.   In each of the conversations with Defendants, Plaintiffs discussed their confidential personal financial circumstances and affairs, on each account.  It was reasonable for the Plaintiffs to expect that the conversations would be confined to the parties to the conversation, and that their conversations were not being overheard or recorded.

105.   Upon information and belief, each of the conversations between Defendants and OSGOOD, and Defendants and Ewing, was a "confidential communication" within the meaning of California Penal Code section 632(c).

106.   California Penal Code section 632.7 *et seq* prohibits a party from recording such conversations without first informing all parties to the conversation that the

conversation is being recorded. Defendants' confidential telephone communications with Plaintiffs were secretly and surreptitiously recorded by Defendants without obtaining consent to record such conversations.

107. Defendants' practice of recording telephone conversations with Plaintiff violated California Penal Code section 632.7.

108. Pursuant to California Penal Code §637.2(a)(1), Plaintiffs are entitled to recover statutory damages in the amount of $5,000 per violation. Plaintiffs' counsel is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5. Plaintiffs consulted with several California licensed attorneys and paid for said legal advice to enable them to bring this suit.

109. Pursuant to California Penal Code §637.2(b), Plaintiffs also seeks a preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA and to prohibit and prevent Defendants from making future extortionate threats to Plaintiff Ewing and his family.

110. Pursuant to California Penal Code §637, Defendants have willfully disclosed the contents of Plaintiff's telephonic communications to a third party without OSGOOD or Ewing's consent.

## VIOLATION OF 47 U.S.C. §227 DO NOT CALL REGISTRY

### Second Cause of Action

### II.

**(as to Defendant McAllister, Defendant Main Streat Marketing, LLC and all fictitiously named defendants)**

111.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

112.   47 C.F.R. 64.1200(c)(2) prohibits calling any number on the national Do Not Call Registry.  47 C.F.R. 64.1200(a)(1)(iii) states that no person or entity may initiate any commercial purpose telephone call to any cellular telephone that is already on the national do-not-call registry.

113.   Plaintiffs and Defendants do not and did not ever have any pre-existing or established business relationship at any time.  Defendants are not a tax-exempt nonprofit organization or a political organization.  Defendants were not calling Plaintiffs to take a poll or count votes.

114.   Upon information and belief formed after reasonable and diligent research, Defendants do not have a do not call database.  Defendants refused to identify themselves upon request by Plaintiffs.   Defendants refused to put Plaintiffs on their do not call list even after demanding the same in writing which was replied to by Robker himself.  Defendants used and employed an automated dialer to call Plaintiffs which is made unlawful under 47 USC §227.

115.   Defendants do not have a do not call policy that is written.

116.   Defendants refused to provide Plaintiffs with a written copy of any do not call policy.

117.   Defendants do not scrub their call lists against the national do not call list or registry.

118.   Defendants do not have any personal relationship with Plaintiffs.

119.   Defendants refused to provide the full name of the caller on the telephone who initiated the call.

120.   Defendants refused to provide a telephone number or address at which the Defendants could be contacted.

121.   Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the do-not-call-list requirements under 47 U.S.C. §227(c )(5).  *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiffs may recover both $1500 statutory damages awards even if both violations occurred in the same telephone call.

122.   Defendants engaged in unsolicited advertising through the use of wires in the United States and did not have written permission to use a pre-recorded voice message.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests that the Court enter judgment against

Defendants as follows:

A.     For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2); $500 plus threefold damages for intentional violation of the Do Not Call registry for each and every call, failure to maintain an do not call list, and failure to provide a written copy of do not call policy.

B.     For punitive damages in an amount to be determined with exactness at trial herein;

C.     For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

D.     For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5.

E.     For pre- and post-judgment interest at the legal rate; and

F.     For any other relief that the Court deems just and proper.

G.     For costs of service of process.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and demands a trial by jury for all claims so triable.

**VERIFIED COMPLAINT**:  The statements, declarations, averments and assertions made herein are hereby verified as true, complete, and accurate under penalty of perjury under the laws of the State of California.

Dated this 14th day of January, 2017

Claudine Osgood,
Plaintiff in pro per

/s/ *Anton Ewing*
Anton Ewing,
Plaintiff in pro per

# DECLARATION IN SUPPORT OF FIRST AMENDED COMPLAINT

I, Anton Ewing, hereby depose, declare and state the following as true and correct under penalty of perjury under the laws of the State of California:

1.   I was called multiple times by Defendants herein and said calls were recorded without my knowledge or consent on or about May 3, 2016 and at other times. There was no warning at the beginning of the calls.
2.   My cellular telephone was registered with the national Do Not Call list more than 31 days prior to any and all calls made to my phone.
3.   I was called by a Defendants using a pre-recorded voice robo-dialer.
4.   I received multiple emails from Jerrod McAllister, one in which he told me to "Fuck [my]self" and in another he called me a "dickhead."
5.   I have never given Defendants consent or permission to use an ATDS to call my phone.

I am competent to testify to the above stated factual assertions.

Dated this 14th day of January, 2017

/s/ *Anton Ewing*
Anton Ewing
Plaintiff in pro per